Timothy **WILLIAMS,** Appellant–Defendant,

v.

**STATE of Indiana,** Appellee–Plaintiff.

No. 49A04–0009–CR–371.

Court of Appeals of Indiana.

Feb. 26, 2001.

Janice L. Stevens, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Rosemary L. Borek, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Timothy Williams (Williams), appeals the trial court's denial of his motion to suppress.

We reverse.

### ISSUE

Williams raises one issue on appeal, which we restate as follows: Whether the trial court erred in denying Williams' motion to suppress.

### FACTS AND PROCEDURAL HISTORY

On May 12, 2000, at approximately 8:50 p.m., Officer Jack Tyndall of the Indianapolis Police Department observed Williams talking to a female, later identified as Charlene Smith (Smith), on the corner of East Ohio Street and North Randolph Avenue in Indianapolis, Indiana. Officer Tyndall observed Williams and Smith making some type of hand to hand exchange, but he did not see what was being exchanged. After this occurred, Smith looked over her shoulder, saw Officer Tyndall, and she and Williams then walked away in separate directions.

In response, Officer Tyndall quickly pulled his vehicle between Williams and Smith in order to stop them both. He then got out of his vehicle and told Williams and Smith to stop. Both Williams and Smith complied with Officer Tyndall's order to stop. Office Tyndall then told Williams and Smith to come over to the police car and place their hands on the car. As Williams walked towards the officer, he tripped and almost fell down. Williams next put his hand in the small pocket of his jeans; he then took his hand out and reinserted it into the large pocket of his jeans. At this point, Officer Tyndall drew his weapon and yelled at Williams to take his hand out of his pocket. Williams hesitated and then took his hand out of his pocket and made some movement as if he was throwing something away. Officer Tyndall placed Williams in handcuffs and while doing so Office Tyndall found a knife in Williams' pocket.

At that time, another officer arrived and Officer Tyndall searched the ground nearby with his flashlight to see if Williams had in fact thrown something on the ground. The officers were unable to find anything. Meanwhile, Officer Tyndall continued to talk to Williams and noticed the smell of alcohol on his breath and that his speech was slurred. Consequently, Williams was placed under arrest for public intoxication, a class B misdemeanor, Ind.Code § 7.1–5–1–3. Williams was then searched and a small plastic bag was found in his jacket pocket. The bag contained a substance that was later determined to be cocaine. As a result, Williams was also charged with possession of cocaine, a class D felony, Ind.Code § 35–48–4–6.

On July 12, 2000, Williams filed a motion to suppress the evidence leading to his arrest on both charges. Williams argued that Office Tyndall did not have a reasonable suspicion to stop him, and therefore, any evidence discovered as a result of the illegal detention, search and seizure should be suppressed. On July 26, 2000, a hearing was held on this motion and the following day, the trial court denied the motion.

This interlocutory appeal followed.

### DISCUSSION AND DECISION

Williams argues that the trial court erred in denying his motion to suppress. Essentially, Williams argues that Officer Tyndall lacked a reasonable suspicion to conduct an investigatory stop, and as such, the evidence discovered as a result of the stop should have been suppressed.

■ The trial court has broad discretion in ruling on the admissibility of evidence. *Drake v. State*, 655 N.E.2d 574, 575 (Ind.Ct.App.1995). We will reverse a trial court's ruling on the admissibility of evidence only when it has been shown that the trial court abused its discretion. *Carter v. State*, 692 N.E.2d 464, 465 (Ind.Ct. App.1997). A trial court's decision to deny a motion to suppress is reviewed as a matter of sufficiency. *Wilson v. State*, 670 N.E.2d 27, 29 (Ind.Ct.App.1996). Thus, in reviewing a trial court's decision on a motion to suppress, we do not reweigh the evidence or judge the credibility of witnesses, but determine if there was substantial evidence of probative value to support the trial court's ruling. *Whitfield v. State*, 699 N.E.2d 666, 668 (Ind.Ct.App. 1998), *trans. denied.* Therefore, when evaluating determinations of reasonable suspicion, we accept the factual findings of the trial court unless they are clearly erroneous. *L.A.F. v. State*, 698 N.E.2d 355, 356 (Ind.Ct.App.1998). However, the ultimate determination of reasonable suspicion is reviewed *de novo.* *Id.*

■ The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons ... against unreasonable search and seizures." U.S. Const. amend IV. "Generally, a search must be reasonable and conducted pursuant to a properly issued warrant. When a search is conducted without a warrant, the State bears the burden of proving the search was justified under one of the limited exceptions to the warrant requirement." *Webb v. State*, 714 N.E.2d 787, 788 (Ind.Ct.App.1999) (citation omitted). The United States Supreme Court established in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the rule that a police officer can briefly detain a person for investigatory purposes even without probable cause, if the officer has a reasonable suspicion of criminal activity based on specific and articulable facts. The requirement of reasonable suspicion is satisfied when the facts known to the officer, together with the reasonable inferences arising therefrom, would permit an ordinary prudent person to believe that criminal activity has or was about to occur. *Taylor v. State*, 639 N.E.2d 1052, 1054 (Ind.Ct.App.1994). "Such reasonable suspicion must be comprised of more than an officer's general 'hunches' or unparticularized suspicions." *Webb*, 714 N.E.2d at 788 (citing *Terry*, 392 U.S. at 27, 88 S.Ct. 1868).

[7, 8] The scope of an investigatory stop is limited because it is permitted on less than probable cause. *Id.* "Reasonable suspicion justifying a limited investigative stop does not give law enforcement officers all the rights attendant to arrest, but only the right to 'temporarily freeze the situation in order to make investigative inquiry.'" *Id.* (citing *Platt v. State*, 589 N.E.2d 222, 227 (Ind.1992)). "The requirements of the Fourth Amendment are satisfied if the facts known to the officer at the moment of the stop are such that a person 'of reasonable caution' would believe that the 'action taken was appropriate.'" *Myers v. State*, 714 N.E.2d 276, 284 (Ind.Ct.App. 1999) (*citing Terry*, 392 U.S. at 22, 88 S.Ct. 1868), *trans. denied.*

■■ The State argues that in determining whether the stop was reasonable, we should consider all the events that transpired up until the time Officer Tyndall successfully restrained Williams. This court has concluded that "the seizure of the individual does not occur until 'the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Wilson v. State*, 670 N.E.2d 27, 30 (Ind.Ct.App.1996)(citing *Terry*, 392 U.S. at 20, n. 16, 88 S.Ct. 1868). Thus, when a person being questioned no

longer remains free to leave, an investigatory stop has begun. *Kenner v. State*, 703 N.E.2d 1122, 1127 (Ind.Ct.App.1999), *reh'g denied, trans. denied.* Therefore, Williams was "seized" for Fourth Amendment purposes when Officer Tyndall ordered him to stop. At that point, Williams was restrained by Officer Tyndall's show of authority and he was not free to leave. Accordingly, in determining whether the investigatory stop was reasonable, we will only consider the events that occurred prior to Williams being ordered to stop.

[11] What we must decide here is whether Officer Tyndall had a reasonable suspicion to justify an investigatory stop when he observed Williams and Smith talking and appearing to exchange something and then walking off in different directions after noticing the police officer. Williams contends that Officer Tyndall did not have a reasonable suspicion to stop him. The parties agree that Officer Tyndall did not see the items that Williams and Smith exchanged. Thus, Officer Tyndall's only basis for stopping William and Smith was the fact that they exchanged something and then walked away.

 Whether an investigatory stop is justified is determined on a case by case basis. *Myers*, 714 N.E.2d at 284. In making this determination, we consider the totality of the circumstances. *Stalling v. State*, 713 N.E.2d 922, 925 (Ind.Ct.App. 1999). In *Webb*, 714 N.E.2d at 789, we held that the defendant's actions of turning away from a police officer and putting something down his pants was not sufficient conduct to justify an investigatory stop. Further, in *Stalling*, 713 N.E.2d at 925, we concluded that the defendant's presence in a high crime area combined with his conduct of turning away and making movements toward his waistline also did not sustain a suspicion that criminal activity was afoot. Additionally, we have held that walking away from police officers in a high crime area is insufficient to establish a reasonable suspicion. *Tumblin v. State*, 664 N.E.2d 783, 784 (Ind.Ct.App. 1996).

Nevertheless, the State relies on our decision in *Shinault v. State*, 668 N.E.2d 274, 277 (Ind.Ct.App.1996), in support of its position that Officer Tyndall had a reasonable suspicion to stop Williams. In *Shinault*, we affirmed the trial court's denial of Shinault's motion to suppress evidence obtained during an investigatory stop. *Id.* We concluded that there was reasonable suspicion to stop Shinault after the police observed him involved in some type of transaction with another person, who was known to be involved in illegal activity, in a high narcotics traffic area, and where the two walked away in different directions after Shinault saw the patrol car. *Id.* The *Shinault* decision however is distinguishable because unlike *Shinault*, here there was no evidence that Williams was in a high crime area or that Officer Tyndall knew him or Smith to be involved in criminal activity.

Alone, Williams' act of walking away is an insufficient basis for an investigatory stop. *See Tumblin*, 664 N.E.2d at 784. Furthermore, the evidence concerning the "exchange" between Williams and Smith is equally insufficient to support the stop because the officer had no idea what Williams and Smith exchanged. Officer Tyndall's suspicion was based merely on a hunch that Smith and Williams were involved in criminal activity and this is not a sufficient basis for an investigatory stop. *See Webb*, 714 N.E.2d at 788.

Thus, considering the totality of the circumstances of this case, we find that the evidence fails to establish that Officer Tyndall had a reasonable suspicion of criminal activity prior to stopping Williams.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred in denying Williams' motion to suppress.

Reversed.

DARDEN and ROBB, JJ., concur.