**Jeffrey RYBOLT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0109–CR–402.

Court of Appeals of Indiana.

June 28, 2002.

---

Susan D. Rayl, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Jeffrey Rybolt ("Rybolt") was charged with possession of marijuana,[1] as a Class A misdemeanor, in Marion Superior Court. Rybolt filed a motion to suppress the marijuana found as the result of a pat-down search conducted during a traffic stop. The motion was denied. He has filed this interlocutory appeal arguing that the marijuana obtained by police during the pat-down search should have been suppressed because the search was unlawful in violation of the Fourth Amendment of the United States Constitution.

We reverse.

### Facts and Procedural History

On September 21, 2000, Officer Robert Brake ("Officer Brake") responded to a dispatch that a vehicle was stopped in the crosswalk at the intersection of Pennsylvania and South Streets in Indianapolis. Officer Brake pulled up behind the vehicle, which was driven by Rybolt, with his emergency lights activated and attempted to get Rybolt's attention by using his air horn. When Rybolt remained unconscious, Officer Brake approached the vehicle and tapped on the driver's side window. Rybolt eventually awoke and rolled down

his window. Rybolt then gave his driver's license to Officer Brake, pursuant to Brake's request.

Officer Brake believed that Rybolt was under the influence of narcotics because Rybolt had "heavy glossy eyes," which he felt was indicative of marijuana use. Tr. p. 16. Therefore, after Officer Brake took Rybolt's license, he immediately ordered Rybolt to step out of the vehicle. Rybolt cooperated immediately and fully with Officer Brake's direction.

Although Rybolt did not make any furtive or nervous movements, Officer Brake performed a pat-down search of Rybolt because of Brake's belief that any person who commits a drug offense is likely armed. Tr. pp. 21–22. During the search, Officer Brake felt a plastic bag in Rybolt's pocket. Officer Brake believed from his experience that the bag contained marijuana, and therefore, he asked for Rybolt's consent to reach into his pocket. Rybolt gave his consent, and Officer Brake retrieved the bag, which contained 6.06 grams of marijuana.

Rybolt was charged with possession of marijuana, as a Class A misdemeanor. Rybolt moved to suppress the marijuana obtained as a result of the pat-down search. The motion was denied, and Rybolt requested that the trial court certify its order denying his motion to suppress for interlocutory appeal. The trial court granted his request, and on October 5, 2001, our court accepted jurisdiction of this interlocutory appeal. Additional facts will be provided as necessary.

### Discussion and Decision

■ Rybolt argues that the pat-down search was conducted in violation of the Fourth Amendment of the United States

---

1. Ind.Code § 35–48–4–11 (1998).

Constitution,[2] and therefore, the trial court erred when it denied his motion to suppress. The admissibility of evidence is within the sound discretion of the trial court and we will not disturb its decision absent a showing that the court abused that discretion. *Williams v. State*, 754 N.E.2d 584, 587 (Ind.Ct.App.2001), *trans. denied*. When we review a motion to suppress, we will not reweigh the evidence, but will determine if there is substantial evidence of probative value to support the trial court's ruling. *Camp v. State*, 751 N.E.2d 299, 301 (Ind.Ct.App.2001). "We look to the totality of the circumstances and consider all uncontroverted evidence together with conflicting evidence that supports the trial court's decision." *Id.* The trial court's judgment will be affirmed if it is sustainable on any legal grounds apparent in the record. *Id.*

 The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches or seizures shall not be violated." A search warrant is a condition precedent to a lawful search. *Williams*, 754 N.E.2d at 587. "Searches conducted outside the judicial process are per se unreasonable unless subject to a few well delineated exceptions." *Id.* at 587–88 (citing *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). The State bears the burden of demonstrating the existence of one of the exceptions. *Id.* at 588. An exception exists "when a police officer makes a Terry stop, if he has reasonable fear of danger, he may conduct a carefully limited search of the outer clothing of the suspect in an attempt to discover weapons that might be used to harm him." *Id.* (citing *Shinault v. State*, 668 N.E.2d 274, 277 (Ind.Ct.App.1996)). The officer's authority to perform a pat-down search is dependent upon the nature and extent of his particularized concern for his safety. *Id.* (citing *Wilson v. State*, 745 N.E.2d 789, 792 (Ind.2001)). A police officer "may not frisk for weapons 'on less than reasonable belief or suspicion directed at the person to be frisked.'" *Wilson*, 745 N.E.2d at 792 (quoting *Ybarra v. Illinois*, 444 U.S. 85, 94, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)).

In *Camp*, a police officer observed the defendant stop his vehicle on a residential street in a high-crime area at 4:30 in the morning. *Camp*, 751 N.E.2d at 300. A passenger in the defendant's vehicle approached a house where he met and spoke with a woman for about twenty seconds, and the woman appeared to give something to the passenger. *Id.* at 300–01. The passenger then returned to the vehicle and he and the defendant drove away. The officer followed and stopped the vehicle after the defendant failed to make a complete stop at an intersection. *Id.* The officer made a request to search the vehicle and the defendant consented. When the defendant got out of the vehicle, the officer conducted a pat-down search of him and found a crack pipe. *Id.*

On appeal, the defendant did not "directly address the validity of the pat-down search except to assert, without explanation, that it 'went beyond the scope of any

---

2. In his appellate brief, Rybolt notes that both the Fourth Amendment of the U.S. Constitution and Article I, Section 11 of the Indiana Constitution protect citizens from unreasonable searches and seizures. Nevertheless, Rybolt fails to provide an independent analysis of Article I, Section 11 of the Indiana Constitution; rather, his focus is on the Fourth Amendment of the U.S. Constitution. *See* Br. of Appellant at 10–14. Failure to make a cogent argument under Article I, Section 11 of the Indiana Constitution constitutes waiver of the issue on appeal. *See* Ind. Appellate Rule 46(A)(8); *West v. State*, 755 N.E.2d 173, 181 (Ind.2001) (citations omitted).

consent given' and that the crack pipe found in the pat-down search was 'fruit of the poisonous tree.'" *Id.* at 302 (citing Br. of Appellant at 4, 15). Although our court declined to address the validity of the pat-down search because the evidence supported a finding that the defendant consented to it, we observed that we were "troubled by this officer's statement that he felt his routine Terry searches are justified because 'I have reason to think everybody has a weapon ... in my profession.'" *Id.* We then stated that

> [u]nder this standard, every citizen would be subject to a Terry search at any time solely by virtue of that citizen's interaction with the police. Because the limitations on Terry searches exist to protect citizens from police intrusions on constitutionally-protected liberties, we emphasize that a police officer cannot justify a Terry search simply by asserting his status as a police officer or his experience in that profession.

*Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 12, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). We also observed that the officer's search of the defendant was not justified. *Id.* at 304. However, we determined that "inadequacy of the officer's justification for the search [was] not dispositive because we [found] Camp consented to the search." *Id.*

In *Jett v. State*, 716 N.E.2d 69, 70 (Ind. Ct.App.1999), the defendant was stopped for speeding and improper passing. After the police officer stopped the defendant, the defendant immediately exited his vehicle. However, when the officer ordered him to get back into his vehicle, he did so. *Id.* The officer then advised the defendant of the reason for the traffic stop, asked defendant to exit the vehicle, and the officer conducted a pat-down search of the defendant. *Id.* During the search, the officer felt something hard, which could have

been a weapon. The officer looked inside the defendant's pocket and observed a cigarette package with a plastic bag sticking out of it. The plastic bag contained a leafy substance, which was later identified as marijuana. *Id.* The defendant was arrested and convicted for possession of marijuana. *Id.*

On appeal, the defendant argued "that the officer's patdown search was not supported by an objectively reasonable fear for the officer's safety." *Id.* The State contended that the pat-down search was reasonable because the defendant exited his vehicle immediately after the officer stopped him, "which was unusual and could be seen as a sign of hostility toward the officer." *Id.* However, we determined that "a reasonable person in the officer's circumstances would not have reasonable suspicion to believe that" the defendant was armed and dangerous and stated:

> [w]e accept the officer's interpretation of [the defendant's] action as a possible sign of hostility. However, the officer testified that [the defendant] did not attempt to rush him and, in fact, [the defendant] immediately complied with the officer's order to get back inside his vehicle. After reentering his vehicle, [the defendant] made no furtive or threatening movements and remained inside his vehicle until the officer ordered him out in order to perform the patdown search. Thus, any fear for his safety that the officer may have felt based on [the defendant's] initial exit of his vehicle was alleviated by [the defendant's] subsequent behavior. In fact, the officer testified that "there was nothing indicating that [the defendant] was armed, it just ... the ... for officer's safety anyone and everyone can be armed." This type of generalized suspi-

cion does not authorize a patdown search.

*Id.* at 70–71 (internal citation omitted).

In *Mitchell v. State,* 745 N.E.2d 775, 781 (Ind.2001), the defendant was under investigation for allegedly dealing narcotics, and the police officer providing mobile surveillance of him performed a traffic stop when the defendant committed a stop sign violation. During the traffic stop, the defendant "initially exhibited considerable nervousness and then relief when advised that he was only being stopped for a stop sign violation." *Id.* However, the defendant cooperated with the traffic stop and followed the officer's instructions. *Id.* Our supreme court determined that the defendant's "apparent nervousness and then relief does not give rise to a reasonable suspicion that he was armed and a danger to the officer's safety," and there was no basis "justifying the officer's pat down search of" the defendant. *Id.* at 781–82.[3]

In this case, Rybolt's vehicle was sitting in the crosswalk of an intersection, and Rybolt was unconscious in the driver's seat. Officer Brake was eventually able to rouse Rybolt by tapping repeatedly on the window of the vehicle. Brake then asked Rybolt for his driver's license, and upon attaining the license, he asked Rybolt to step out of the vehicle. Brake then immediately conducted a pat-down search on Rybolt. At the hearing on the motion to suppress, the following testimony was given:

> DEFENSE COUNSEL: ... [Y]ou asked him to get out of the car, why did you do that?
>
> OFFICER BRAKE: I wanted to pat him down. I could notice in his eyes that to me he appeared through my experience that he was under the influ-

ence of some kind of narcotic. I couldn't smell any alcohol, [s]o I was assuming that it wasn't alcohol related.

. . . .

> OFFICER BRAKE: ... I was still on the scene by myself. And so at that point I wanted to go ahead and pat down for officer's safety. Through my experience, I've known that people who have ... that are in the narcotics ... I don't want to say that narcotics field, but who deal with narcotics always seem to have some kind of weapon or something that they can use as a weapon. And I was by myself at that time. So that's why I conducted my pat down.

. . . .

> DEFENSE COUNSEL: .... What gave you particular reason to think that this particular defendant was armed and dangerous?
>
> OFFICER BRAKE: I don't have the ability to know what a defendant has. I don't know his state. I don't know what kind of narcotics he's using. I'm worried about what he can produce faster than I can react to.

. . . .

> DEFENSE COUNSEL: So your pat down is something that you generally do when you confront what you believe are going to be drug offenses. For your safety. It's your standard practice?
>
> OFFICER BRAKE: I don't [do] it every time but I will admit it's almost every time.

Tr. pp. 9, 17, 21–22. Officer Brake also testified that Rybolt cooperated with him, Tr. p. 22, and there is no evidence in the record indicating that Rybolt consented to the pat-down search.

---

**3.** The court then noted "[t]his conclusion does not, however, reflect on the propriety of the subsequent police detention of Mitchell after finding an illegal weapon and probable drugs in the possession of Mitchell's companion." *Id.* at 782.

■ We agree with Rybolt that a reasonable person in Officer Brake's circumstances would not have a reasonable and particularized suspicion that Rybolt was armed and dangerous. Officer Brake's reasons for justifying the pat-down search included 1) that he was the sole officer initially present at the traffic stop and 2) that he believes that individuals who use narcotics also carry weapons. Officer Brake also admitted that he almost always conducts a pat-down search when he suspects the individual has committed a drug offense.

In this case, Officer Brake was first required to awaken Rybolt before proceeding with his investigation. Rybolt made no furtive movements, and Officer Brake did not testify that Rybolt's actions made him nervous or caused him to fear for his safety. In fact, Brake stated that Rybolt was completely cooperative. Additionally, based upon his suspicion that Rybolt was under the influence of narcotics, Officer Brake could have conducted field sobriety tests on Rybolt, and had Rybolt failed those tests, Brake would have had probable cause to arrest and search him. *See VanPelt v. State*, 760 N.E.2d 218, 223 (Ind. Ct.App.2001), *trans. denied* (where police officers observed the defendant driving erratically, smelled a strong odor of burnt marijuana, and the defendant failed two field sobriety tests, the officers had probable cause to arrest the defendant, and

therefore, the pat-down search conducted prior to the arrest, but after probable cause to arrest existed, was proper).

■ Under these facts and circumstances, Officer Brake's pat-down search of Rybolt was unreasonable, and the marijuana found in his pocket as a result of that search should have been suppressed.[4]

Reversed.

KIRSCH, J., concurs.

BARNES, J., dissents with separate opinion.

BARNES, Judge, dissenting.

I respectfully dissent. I believe that the officer here had probable cause to arrest Rybolt for a misdemeanor offense, namely operating a vehicle while intoxicated ("OWI"). As such, the marijuana seized from Rybolt's pants pocket was recovered during a search incident to that arrest.

The search incident to arrest exception to the warrant requirement provides that a police officer may conduct a search of the arrestee's person and the area within his or her control. *Stevens v. State*, 701 N.E.2d 277, 280 (Ind.Ct.App.1998). "Probable cause for an arrest may exist even though a police officer's subjective evaluation of a situation leads him to the conclusion that he did not possess enough information to establish probable cause at a particular time." *Roberts v. State*, 599

---

4. We note that, although Rybolt did not consent to the pat-down search, during the course of the search, Officer Brake asked for consent to reach into Rybolt's pocket after he felt an object, which he believed to be a plastic bag containing marijuana. Tr. p. 18. Rybolt gave Officer Brake consent to reach into his pocket and Officer Brake removed the bag, which did contain marijuana. However, the marijuana was obtained as the result of an unlawful search, and therefore, it should have been suppressed under the doctrine of the "fruit of the poisonous tree." In a criminal proceeding, the "fruit of the poisonous tree" doctrine bars the admissibility of evidence obtained in the course of unlawful searches and seizures. *Hanna v. State*, 726 N.E.2d 384, 389 (Ind.Ct.App.2000). "To invoke the doctrine, a defendant must show that challenged evidence was obtained by the State in violation of the defendant's Fourth Amendment rights. Stated differently, the defendant must show that the search or seizure was illegal in the first instance." *Id.* (citation omitted).

N.E.2d 595, 598 (Ind.1992). The evidence required to establish probable cause for an arrest is less than that necessary to establish guilt. *Id.* "Probable cause to arrest without a warrant exists if the facts and circumstances known to the officer would warrant a man of reasonable caution to believe that the accused has committed the criminal act in question." *Id.* A search incident to arrest is valid so as long as there was probable cause that a suspect had committed a crime, even if the police officer subjectively did not believe that probable cause existed and did not formally announce that the suspect was under arrest. *See Stevens,* 701 N.E.2d at 281. An arrest occurs when a police officer interrupts the freedom of the accused and restricts his or her liberty of movement. *Id.* at 280.

It is clear to me that Rybolt was, in fact, under arrest when the officer patted him down and discovered the marijuana. He certainly was not free to leave the scene after he was asked to exit his vehicle and the officer took his driver's license. This arrest was plainly supported by probable cause that Rybolt had committed the offense of OWI. The police officer was dispatched to a busy Indianapolis intersection at about 12:30 a.m. because of a report of a car blocking traffic. The officer activated his emergency lights and used his air horn, neither of which aroused Rybolt, the driver of the car. The car's engine was running. The officer then rapped on the driver's side window, and still Rybolt did not immediately respond. When Rybolt did regain consciousness, the officer noticed that Rybolt's responses to the officer's requests were delayed and that he had "heavy glossy eyes." Tr. p. 16. Based on the officer's training and because he could not smell any alcohol, he believed Rybolt was under the influence of some kind of narcotic. A person of reasonable caution would be justified at that point, before the police officer patted down Rybolt, in believing Rybolt had committed OWI.

I am aware that the State did not charge Rybolt with OWI, and acknowledge that I concurred in the *Camp* case cited by the majority. However, because Rybolt was not formally charged with OWI for whatever reason does *not* mean that there was not probable cause to arrest him for that offense. I also believe the facts in *Camp* are easily distinguishable from this scenario. In that case, we expressed concern about the validity of the pat-down of the driver of a vehicle following a pretextual stop for a traffic infraction, failure to make a complete stop, where the officer's only justification for the search was his statement that he had reason, in his profession, to suspect that everybody he encounters may be carrying a weapon. 751 N.E.2d at 301–02. Here, the officer was responding to a dispatch of a driver whose vehicle was blocking traffic, and who was apparently oblivious to other drivers passing him and honking their horns at him. Upon arriving at the scene, the officer discovered that the car's motor was running and reasonably surmised that Rybolt likely was under the influence of some kind of narcotic. There was nothing pretextual about the officer's initial investigation of Rybolt, and the information he gathered during that investigation supported probable cause that Rybolt had committed OWI, a criminal offense, not an infraction. I believe the pat down search conducted in this case was justified, both legally and practically. I, therefore, respectfully dissent.