Bruce Antonio HOWARD,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–0605–CR–219.

Court of Appeals of Indiana.

March 19, 2007.

John Andrew Goodridge, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney Genera, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Bruce Antonio Howard appeals his convictions for dealing in cocaine [1] and possession of marijuana.[2] He raises the issue of whether the trial court erred in denying his motion to suppress because the stop and search of his vehicle and his person were not based on reasonable suspicion.[3]

We reverse.

## FACTS AND PROCEDURAL HISTORY

On October 6, 2005, Officer Vantlin of the Evansville Police Department responded to a call at Dale Haven Apartments, a known high crime area. Upon his arrival, he spotted Cedric Baker ("Baker"), an individual who had various outstanding warrants for his arrest. According to Officer Vantlin, Baker was walking toward a blue Impala (the "vehicle") in the parking lot. *Tr.* at 32. When Baker saw Officer Vantlin, he fled behind the apartment buildings. Officer Vantlin requested that Officer Kajmowicz look for Baker or the vehicle, while he pursued Baker on foot. Officer Vantlin informed Officer Kajmowicz that the vehicle needed to be stopped and barred from the apartment complex.

Officer Kajmowicz quickly spotted and stopped the vehicle and advised the occupant to show his hands. Officer Vantlin returned to assist Officer Kajmowicz and recognized the occupant of the vehicle as Howard, whom he had helped arrest on prior occasions. Both officers testified that Howard failed to comply with their initial requests to show his hands, and that he was fidgeting around in his vehicle. *Id.* at 17, 34–35. Officer Vantlin testified that he continuously called for Howard to "stop moving, stop moving." *Id.* at 34. The officers approached Howard's vehicle together and asked Howard to step out. Howard did not comply until Officer Vantlin opened Howard's driver-side door and directed him to step out of the vehicle. Once Howard was out of the vehicle, Officer Vantlin conducted a pat-down search of Howard's person and found 11.46 grams of crack cocaine and 1.69 grams of marijuana.[4]

The State charged Howard with dealing in cocaine as a Class A felony, possession of cocaine [5] as a Class A felony, and pos-

---

**1.** *See* IC 35–48–4–1.

**2.** *See* IC 35–48–4–11.

**3.** On February 22, 2007, we held oral argument in this matter at Meshingomesia Country Club in Marion, Indiana. We extend many thanks. First, we thank Appellant's counsel for commuting from Evansville and Appellee's counsel for commuting from Indianapolis. We especially thank the Grant County Bar Association, its president Craig Persinger, and the staff of the Meshingomesia Country Club for the various last minute scheduling and preparatory adjustments made due to the inclement weather. Unfortu-

nately, we were unable to hold argument at Marion High School as originally scheduled.

**4.** The pat-down search included the area between Howard's scrotum and anus, commonly known as the "perineum." *Tr.* at 37–38, 51; *Webster's II: New Riverside University Dictionary,* 874 (1984). Officer Vantlin said that he searched this area and felt a lump, proceeded to squeeze the object, and concluded it was contraband and not a weapon. *Tr.* at 38, 51.

**5.** *See* IC 35–48–4–6.

session of marijuana as a Class D felony. A jury convicted Howard as charged. The trial court merged Howard's possession of cocaine conviction into his dealing in cocaine conviction and sentenced Howard to thirty years of incarceration for the cocaine dealing conviction and one year of incarceration for the marijuana possession conviction, with both sentences running concurrently. Howard now appeals.

## DISCUSSION AND DECISION

Howard contends that based on the totality of the circumstances, the police did not have reasonable articulable suspicion necessary to detain him or his vehicle, and, even if they did, the State never established that the officers reasonably believed Howard was armed and dangerous, making Officer Vantlin's search of Howard's outer clothing unreasonable. Further, Howard asserts that the stop was unreasonably long for a *Terry* exception, and therefore required a stricter showing of probable cause, which the State did not show.

■ A trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *Clark v. State*, 804 N.E.2d 196, 198 (Ind.Ct.App.2004). "We review a trial court's ruling on a motion to suppress in a manner similar to claims challenging the sufficiency of the evidence." *Coleman v. State*, 847 N.E.2d 259, 261 (Ind.Ct.App. 2006), *trans. denied* (citing *Williams v. State*, 745 N.E.2d 241, 244 (Ind.Ct.App. 2001)). We do not reweigh the evidence or judge the credibility of witnesses, but only determine if there was substantial evidence of probative value to support the trial court's ruling. *Id.* at 262. "When evaluating determinations of reasonable suspicion, we accept the factual findings of the trial court unless they are clearly erroneous." *Id.* However, the ultimate determination of reasonable suspicion as a matter of law is reviewed *de novo*. *Id.*

■ The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution protect an individual's privacy and possessory interests by prohibiting unreasonable searches and seizures. *Id.* (citing *Burkett v. State*, 785 N.E.2d 276, 278 (Ind.Ct.App. 2003)). Generally, a lawful search must be conducted through a judicially issued search warrant. *Id.* When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Id.*

■ The United States Supreme Court established one such exception in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which held that a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause, if, based on specific and articulable facts together with reasonable inferences from those facts, an ordinarily prudent person would reasonably suspect that criminal activity was afoot. *Id.; see also Parker v. State*, 662 N.E.2d 994, 995 (Ind.Ct.App.1996), *trans. denied*. Reasonable suspicion is determined on a case-by-case basis by looking at the totality of the circumstances. *Coleman*, 847 N.E.2d at 261 (citing *Bridgewater v. State*, 793 N.E.2d 1097, 1100 (Ind.Ct.App.2003), *trans. denied*). In addition to detainment, *Terry* permits a police officer to conduct a limited search of the individual's outer clothing for weapons if the officer reasonably believes the individual is armed and dangerous. *Id.* (citing *Parker*, 662 N.E.2d at 995).

The United States Supreme Court has held that nervous and evasive behavior is a pertinent factor in determining whether

reasonable suspicion exists. *Florida v. Rodriguez,* 469 U.S. 1, 6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); *see also Trigg v. State,* 725 N.E.2d 446, 449 (Ind.Ct.App. 2000) (holding that a pat-down was reasonable where officer approached vehicle after traffic stop and defendant became "very nervous and fidgeted in his seat as if trying to hide or retrieve something"). Our Supreme Court and this court have ruled on searches incident to a lawful stop in *Mitchell v. State,* 745 N.E.2d 775 (Ind. 2001), and *Rybolt v. State,* 770 N.E.2d 935 (Ind.Ct.App.2002), *trans. denied.* In *Mitchell,* the defendant was pulled over for a stop sign violation. 745 N.E.2d at 781–82. Our Supreme Court held that neither the traffic stop nor the defendant's apparent nervousness provided a sufficient basis to conduct a pat-down search. *Id.* In *Rybolt,* the officer's statement that he was the only officer on the scene and that it was his belief that individuals who use drugs often carry weapons did not lead to a reasonable suspicion that the individual was armed and dangerous.[6] 770 N.E.2d at 941.

Howard claims the circumstances in the present case failed to satisfy a finding of reasonable suspicion. Specifically, the officers responded to a call about Baker, an individual with various outstanding warrants, not Howard. Officer Kajmowicz reported to the scene because Officer Vantlin radioed and informed her to watch for the vehicle. Once Officer Kajmowicz stopped the vehicle by ordering the driver to stop and show his hands, Officer Vantlin immediately returned to the scene. Upon Officer Vantlin's arrival, he knew the individual in the vehicle was Howard, not Baker. Howard claims that under these circumstances the police did not have a reason-able suspicion that he was engaged in, was about to engage in, or had been engaged in illegal activity.

■ The State contends that the initial stop and the pat-down search of Howard were reasonable. First, the State argues that the initial stop was consistent with *Terry* in that Howard was only briefly detained for investigatory purposes. Second, the State claims the pat-down search was a search for weapons that was based on the officers' reasonable suspicion. As described in *Trigg,* "in determining whether the police officer acted reasonably under the circumstances, due weight must be given, not to the officer's inchoate and unparticularized suspicions, but to the specific reasonable inferences that the officer is entitled to draw from the facts in light of his experience." 725 N.E.2d at 449.

■ Assuming without deciding that Officer Kajmowicz's initial stop of Howard was reasonable, *see Scott v. State,* 855 N.E.2d 1068, 1073–74 (Ind.Ct.App.2006), the officers were not permitted to order Howard from his car and conduct a *Terry* pat-down search. Prior to ordering Howard from his car, Officer Vantlin recognized that the driver was Howard, not Baker. He could see Howard's hands and the interior of the car, but he did not testify that either raised officer safety concerns. Neither officer testified that, when Howard exited his vehicle, they feared for officer safety or that they had any weapons drawn when they approached Howard. *See id.* (purpose of a *Terry* search is not to discover evidence of crime, but rather to allow an officer to pursue his investigation without fear of violence). Officer Vantlin testified that he knew Howard from prior drug arrests, but there is no evidence that

---

**6.** In *Rybolt,* other facts included that the defendant was asleep when the officer approached, and the defendant did not make any furtive movements at any time. *Rybolt v. State,* 770 N.E.2d 935, 941 (Ind.Ct.App.2002).

Howard was armed on these prior occasions, resisted arrest, or otherwise presented concerns for officer safety. Perhaps creating the most significant concern regarding the legality of this search was the point that Officer Vantlin testified that he had previously told Howard he was going to search him every time he saw him. *Tr.* at 57. These circumstances did not warrant a pat-down search incident to a *Terry* stop. We conclude that the seizure of Howard's person and thereby his possessions was illegal. *See Sanchez v. State,* 803 N.E.2d 215, 221 (Ind.Ct.App. 2004), *trans. denied* (citing *Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (the exclusionary rule, also known as the 'fruit of the poisonous tree' doctrine, bars from trial physical, tangible materials obtained during or as a direct result of an unlawful invasion)). As such, the trial court should have suppressed the evidence.

Reversed.

BAKER, C.J., and SHARPNACK, J., concur.