**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana



FILED
Nov 20 2012, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IVAN CALDERON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1202-CR-88 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Amy J. Barbar, Magistrate
Cause No. 49G02-1108-FC-59783

**November 20, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Ivan Calderon ("Calderon") was convicted after a bench trial of disarming a law enforcement officer[1] as a Class C felony, pointing a firearm[2] as a Class D felony, resisting law enforcement[3] as a Class D felony, possession of marijuana[4] as a Class A misdemeanor, and carrying a handgun without a license[5] as a Class A misdemeanor. He appeals, raising the following restated issue: whether the trial court committed fundamental error when it admitted evidence at trial that he contends was discovered in violation of the Fourth Amendment to the United States Constitution because the officer lacked reasonable suspicion to stop and frisk him.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the evening of August 22, 2011, Indianapolis Metropolitan Police Officer Joel Kellar ("Officer Kellar") was on routine patrol in Indianapolis, Indiana when he noticed a large group of people in the common area at the Greystone Apartments located at 5430 Scarlet Drive. Officer Kellar parked his patrol car nearby and proceeded to walk around the area and observe what was going on. Officer Kellar patrolled the area frequently, and when he approached the large group of people, he looked to see if he recognized anyone from prior dealings. The group consisted of seven to eight people, all of whom were

---

[1] *See* Ind. Code § 35-44-3-3.5. We note that this section was repealed by Public Law 126-2012, section 53, effective July 1, 2012, and it can now be found at Indiana Code section 35-44.1-3-2.

[2] *See* Ind. Code § 35-47-4-3.

[3] *See* Ind. Code § 35-44-3-3. We note that this section was repealed by Public Law 126-2012, section 53, effective July 1, 2012, and it can now be found at Indiana Code section 35-44.1-3-1.

[4] *See* Ind. Code § 35-48-4-11.

[5] *See* Ind. Code §§ 35-47-2-1, 35-47-2-23.

black except for one male, later identified as Calderon.

As Officer Kellar approached the group, he saw smoke and smelled the odor of burnt marijuana. Officer Kellar asked the group how everyone was doing, which got everyone's attention. Calderon stood out to Officer Kellar because the officer had never seen Calderon at the apartment complex before. When Officer Kellar made eye contact with Calderon, Calderon's whole demeanor changed, and he put his head down and stuck his hands in his pockets. Because of problems with crime at the apartment complex, including break-ins, the apartment complex's management has requested that officers look for individuals who were trespassing. Officer Kellar asked Calderon if he lived in the apartment complex. Calderon responded something to the effect of, "I'm going inside or I'm leaving now." *Tr.* at 42. He then turned and walked toward Apartment B on the bottom floor of a nearby building. Officer Kellar was aware from prior investigations that a black male, a white female, and their child lived in the apartment to which Calderon had been walking, and he had never seen Calderon in that particular apartment.

Officer Kellar told Calderon that he did not answer the officer's question and asked Calderon to turn around and come back. Calderon walked back toward the officer. Officer Kellar reached his left hand toward Calderon's shoulder so that Officer Kellar could perform a patdown search with his right hand. However, when Officer Kellar attempted to begin the patdown, Calderon immediately began running away from the officer. Officer Kellar grabbed Calderon's shirt and was able to stay with him when Calderon ran between vehicles in the parking lot. Officer Kellar tried to put Calderon in

3

custody, but Calderon started to fight with the officer. When Officer Kellar attempted to pin Calderon against a vehicle so that the officer could reach his radio and call for back-up, he felt pressure on his weapon. Officer Kellar was unable to call for back-up because he had to step back from Calderon to make sure Calderon could not remove the officer's weapon from its holster. Calderon again ran away from Officer Kellar, but the officer was able to catch Calderon.

When Officer Kellar caught up to Calderon, Calderon threw the officer into a brick wall. The two continued to struggle with each other, and when Officer Kellar tried to take Calderon to the ground, Calderon pointed a handgun at the officer's head. Officer Kellar immediately threw Calderon to the side to try to keep the handgun away from the officer. The struggle continued between the two, during which time, Calderon pointed the handgun at Officer Kellar three or four times. Calderon again ran away from the officer, but Officer Kellar caught him. At this point, Calderon raised his weapon again, and Officer Kellar reached for his own weapon while trying to prevent Calderon from pointing his gun at the officer. As soon as Officer Kellar removed his weapon from its holster, Calderon said, "Okay, Okay, I'm done. I'm done," and he dropped his weapon. *Id*. at 60. After other officers arrived and Calderon was handcuffed, the officers found a handgun on the ground next to Calderon as well as three baggies of marijuana in his pants pocket.

The State charged Calderon with disarming a law enforcement officer as a Class C felony, pointing a firearm as a Class D felony, criminal gang activity as a Class D felony, resisting law enforcement as a Class D felony, possession of marijuana as a Class A

misdemeanor, and carrying a handgun without a license as a Class A misdemeanor. A bench trial was held, and Calderon did not object to the admission of the handgun and marijuana seized from him. At the conclusion of the trial, Calderon was found guilty of disarming a law enforcement officer, pointing a firearm, resisting law enforcement, possession of marijuana, and carrying a handgun without a license, but was acquitted of criminal gang activity. The trial court sentenced him to an aggregate sentence of three-and-one-half years with two years executed and one-and-one-half years on probation. Calderon now appeals.

## DISCUSSION AND DECISION

The admission of evidence is within the sound discretion of the trial court, and we will reverse only on a showing of abuse of discretion. *Boggs v. State*, 928 N.E.2d 855, 862 (Ind. Ct. App. 2010) (citing *McClendon v. State,* 910 N.E.2d 826, 832 (Ind. Ct. App. 2009), *trans. denied*), *trans. denied*. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* However, Calderon failed to object to the admission of the evidence at trial, so he has waived any error in the admission of the evidence. *Willis v. State*, 907 N.E.2d 541, 545 (Ind. Ct. App. 2009). A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.*

5

(citing *Matthews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)). The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." *Id*. (citing *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009)). This exception is available only in "egregious circumstances." *Id*. (citing *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003)).

Calderon argues that the trial court erred when it allowed the handgun and marijuana seized from him to be admitted into evidence. He contends that the evidence was discovered in violation of the Fourth Amendment to the United States Constitution because Officer Kellar lacked reasonable suspicion to stop and frisk him. Calderon claims that this is because Officer Kellar did not have any evidence of illegality when he stopped Calderon, and because the stop was not justified, it was fundamental error to admit the evidence seized as a result of the stop.

The Fourth Amendment protects persons from unreasonable search and seizure, and this protection has been extended to the states through the Fourteenth Amendment. U.S. Const. amend. IV; *Boggs*, 928 N.E.2d at 863. Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Id*. (citing *Halsema v. State*, 823 N.E.2d 668, 676 (Ind. 2005)). When a search or seizure is conducted without a warrant, the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search or seizure. *Id*.

The United States Supreme Court established one such exception in *Terry v. Ohio,* 392 U.S. 1 (1968), which held that a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause, if, based on specific and

6

articulable facts together with reasonable inferences from those facts, an ordinarily prudent person would reasonably suspect that criminal activity was afoot. *Howard v. State*, 862 N.E.2d 1208, 1210 (Ind. Ct. App. 2007). Reasonable suspicion is determined on a case-by-case basis by looking at the totality of the circumstances. *Id*. In addition to detainment, *Terry* permits a police officer to conduct a limited search of the individual's outer clothing for weapons if the officer reasonably believes the individual is armed and dangerous. *Id.*

In the present case, the evidence showed that, at the time that Officer Kellar stopped Calderon, the officer was aware that there had been reports of criminal activity at the apartment complex, including break-ins of uninhabited apartments and individuals trespassing on the property. He also observed smoke and smelled the odor of marijuana coming from the area where the group of people, including Calderon, was standing when Officer Kellar approached. Officer Kellar had a familiarity with the area, and he did not recognize Calderon and had never seen him at the apartment complex before. When Officer Kellar made eye contact with Calderon, Calderon acted evasively, looking down and sticking his hands in his pockets. Calderon then began to walk away in the direction of an apartment where Officer Kellar knew the occupants and did not believe that Calderon lived. Based on the totality of the circumstances, reasonable suspicion existed for Officer Kellar to stop Calderon. We therefore conclude that Calderon has failed to demonstrate that the trial court committed fundamental error when it admitted the evidence seized from Calderon. Affirmed.

NAJAM, J., and MAY, J., concur.