**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KURT A. YOUNG**
Nashville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| WILLIAM RINEHART, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 49A05-1305-CR-236 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
The Honorable Michael S. Jensen, Magistrate
Cause No. 49G20-1211-FC-79887

**February 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

As a result of a handgun found during a police pat-down search in the course of a traffic stop for failure to use a signal, William Rinehart ("Rinehart") was convicted of Possession of a Handgun Without a License, as a Class C felony.[1] He presents the issue of whether the pat-down search was conducted in violation of the Fourth Amendment. We reverse.

## Facts and Procedural History

On November 25, 2012, around 5:30 p.m., Indianapolis Metropolitan Police Officer John Gedig ("Officer Gedig") observed a vehicle leave its curb-side parking space and enter the southbound flow of traffic on Clifton Street, without use of a traffic signal. When the vehicle reached 30th Street, Officer Gedig initiated a traffic stop. He was joined by Officer Jason Norman ("Officer Norman").

Officer Gedig, having been signaled by Officer Norman that he "smelled something," asked the three occupants of the vehicle "about drugs or weapons." (Tr. 25.) The driver and front passenger immediately answered "no" but there was a "slight hesitation" on the part of Rinehart, the back seat passenger. (Tr. 26.) Rinehart also appeared to avoid eye contact with the officers.

Officer Gedig asked the occupants to exit the vehicle, Rinehart first. Rinehart, but not the female passengers, was patted down. In his waistband was a handgun for which he did not have a license. Officer Gedig arrested Rinehart. He did not search the vehicle for drugs.

---

[1] Ind. Code § 35-47-2-1.

2

On March 13, 2013, Rinehart was tried in a bench trial on the charge of Possession of a Handgun Without a License. Rinehart objected to the admissibility of evidence obtained in the pat-down search and the parties agreed that the admissibility issue would be argued and ruled upon at the conclusion of the trial. The parties submitted written briefs after the presentation of evidence. The trial court ruled that evidence of the handgun was admissible and Rinehart was found guilty of the charge against him. He admitted that he had a prior conviction for the same offense, elevating the instant offense to a Class C felony. Rinehart was sentenced to two years imprisonment. He now appeals.

**Discussion and Decision**

Standard of Review

The instant appeal presents a challenge to the admissibility of evidence. "Where a defendant does not perfect an interlocutory appeal from a trial court's ruling on a motion to suppress, but objects to the admission of the evidence at trial, the issue on appeal is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." Danner v. State, 931 N.E.2d 421, 426 (Ind. Ct. App. 2010), trans. denied. A trial court has discretion in the admission of evidence and the appellant bears the burden of establishing that the trial court abused its discretion. Patterson v. State, 958 N.E.2d 478, 484-85 (Ind. Ct. App. 2011).

Analysis

Here, the trial court admitted evidence that was seized from Rinehart's person after a traffic stop led to a search. The Fourth Amendment to the United States Constitution states,

in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. This federal right to be free of unreasonable searches and seizures applies to the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 650 (1961). As a general rule, searches and seizures conducted without a warrant supported by probable cause are prohibited by the Fourth Amendment. Clark v. State, 994 N.E.2d 252, 260 (Ind. 2013). As a deterrent mechanism, evidence obtained in violation of the rule is generally not admissible in a prosecution against the victim of the unlawful search or seizure absent evidence of a recognized exception. Id. It is the State's burden to prove that one of the well-delineated exceptions is satisfied. Id.

We review de novo a trial court's ruling on the constitutionality of a search or seizure. Patterson, 958 N.E.2d at 485 (citing Belvedere v. State, 889 N.E.2d 286, 287 (Ind. 2008)). Nonetheless, we defer to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. Id. We do not reweigh the evidence, but consider conflicting evidence most favorable to the trial court's ruling. Id. "The State bears the burden of demonstrating the constitutionality of the measures it uses in securing information." State v. Murray, 837 N.E.2d 223, 225 (Ind. Ct. App. 2005), trans. denied.

Encounters between law enforcement officers and public citizens take a variety of forms, some of which do not implicate the protections of the Fourth Amendment and some of which do. Clark, 994 N.E.2d at 261 (citing Finger v. State, 799 N.E.2d 528, 532 (Ind. 2003)). Consensual encounters do not compel Fourth Amendment analysis; however,

4

nonconsensual encounters do. Id. A detention is typically one of two levels: a full arrest lasting longer than a short period of time, or a brief investigative stop. Id. The former requires probable cause to be permissible and the latter requires the lower standard of reasonable suspicion. Id.

"A traffic stop is a seizure under the Fourth Amendment, [and] police may not initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that a traffic law has been violated or that criminal activity is taking place." Meredith v. State, 906 N.E.2d 867, 869 (Ind. 2009) (citing Whren v. United States, 517 U.S. 806, 809-10 (1996)). An objective basis must exist for suspecting legal wrongdoing. See State v. Atkins, 834 N.E.2d 1028, 1032 (Ind. Ct. App. 2005), trans. denied.

A routine traffic stop is more analogous to a so-called "Terry stop" than to a formal arrest. Wilson v. State, 745 N.E.2d 789, 791 (Ind. 2001) (citing Knowles v. Iowa, 525 U.S. 113 (1998)). The principal issue is whether the police action in question was reasonable under all the circumstances, and involves a dual inquiry: whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Id. at 792. Rinehart does not challenge the propriety of the initial traffic stop, but only the subsequent pat-down search. He claims that the officers failed to articulate any fact to support a reasonable belief that he was armed and dangerous; rather, they conducted a routine search of a male on general grounds of officer safety.

The Fourth Amendment allows privacy interests protected by that amendment to be balanced against the interests of officer safety. Id. "[T]o subject the stopped motorist to a frisk for weapons is permissible only if 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" Id. (quoting Terry v. Ohio, 392 U.S.1, 27 (1968)). "Police may not frisk for weapons 'on less than reasonable belief or suspicion directed at the person to be frisked.'" Id. (quoting Ybarra v. Illinois, 444 U.S. 85, 94 (1979). Accordingly, an officer's authority to conduct a pat-down search depends upon the nature and extent of his particularized concern for his safety and that of others. Id.

"In addition to detainment, Terry permits a police officer to conduct a limited search of the individual's outer clothing for weapons if the officer reasonably believes the individual is armed and dangerous." Howard v. State, 862 N.E.2d 1208, 1210 (Ind. Ct. App. 2007). "[G]enerally, the officer issuing a traffic citation faces a safety threat that is a good deal less than that present in the case of a custodial arrest." Tumblin v. State, 736 N.E.2d 317, 322 (Ind. Ct. App. 2000), trans. denied.

In determining whether an officer acted reasonably under the circumstances, we look to see if there existed articulable facts and reasonable inferences drawn therefrom in light of the officer's experience in order to support a reasonable belief that the individual was armed and dangerous. Clenna v. State, 782 N.E.2d 1029, 1033 (Ind. Ct. App. 2003). A generalized suspicion that the individual may be dangerous does not authorize a pat-down search. Id.

6

(citing Tumblin, 736 N.E.2d at 322). We review findings of reasonable suspicion de novo; this is necessarily a fact-sensitive inquiry. Clark, 994 N.E.2d at 264.

Officer Gedig testified that he conducted a pat-down of Rinehart because "the area is very high in crime-related drugs and weapons. The hesitation, the brief hesitation in answering my question about [the] presence of a weapon by the defendant, and it was simply for officer safety." (Tr. 28.) He later acknowledged that the smell of marijuana was a basis for the pat-down and also acknowledged that he had a "standard procedure," that is, "if I am having a male occupant of a vehicle exit a vehicle on one of my stops, I pat them down for weapons." (Tr. 33.) When asked if Rinehart had "statements or actions that caused you concern for your safety," Officer Gedig responded, "No." (Tr. 34.) He also denied that he smelled marijuana "on" Rinehart. (Tr. 34.)

Officer Norman testified:

Answer: He wouldn't make eye contact. He was – he was across the vehicle, inside the vehicle from me and he was kind of leaning toward the door, that side of the vehicle.

Question: Did you notice anything else about his movement?

Answer: No.

Question: So what happened after they denied having drugs and weapons?

Answer: At that point Officer Gedig got Mr. Rinehart out of the vehicle.

Question: And would this be standard procedure for you guys?

Answer: Yes, sir.     ***

Question: Did Mr. Rinehart make any movements with his body that caused you to fear for your safety?

7

Answer: To fear for my safety, as far as movements, no.

Question: So you are saying his hesitation in answering caused you to fear for your safety; is that what you are saying?

Answer: No, I didn't say that.

(Tr. 41-42, 44.) As such, the officers denied that Rinehart's slight hesitation or aversion of eyes was something that caused a particularized concern for officer safety, but acknowledged acting in accordance with a standard procedure. Their testimony did not establish a reasonable belief that Rinehart was "armed and dangerous." Howard, 862 N.E.2d at 1210. "A vague and general characterization of demeanor such as 'nervousness' does not rise to the level of reasonable suspicion." Tumblin, 736 N.E.2d at 322.

Despite the officers' testimony suggesting that the decision to perform a pat-down search was more motivated by routine than suspicion of the individual, the State insists that much emphasis must be placed on the evidence of the smell of marijuana and Officer Gedig's testimony that the neighborhood of the encounter was a "high crime area." (Tr. 28.) The State points out that an officer's knowledge of crime in the neighborhood is a relevant consideration, particularly where the subject appears to be in possession of an illegal drug. First, the State directs our attention to Adams v. Williams, 407 U.S. 143, 147-48 (1972) (noting that presence in a high-crime area late at night contributes to justification for a frisk) and Bridgewater v. State, 793 N.E.2d 1097, 1100 (Ind. Ct. App. 2003) ("presence in a high-crime area can be considered as a factor in the totality of the circumstances confronting an officer at the time of a stop"), trans. denied.

8

Next, the State approvingly quotes a rule from United States v. Sakyi, 160 F.3d 164, 169 (4th Cir. 1998), specifically: "[W]hen the officer has a reasonable suspicion that illegal drugs are in the vehicle, the officer may, in the absence of factors allaying his safety concerns, order the occupants out of the vehicle and pat them down briefly for weapons to ensure the officer's safety and the safety of others." The State acknowledges that our Indiana Supreme Court has not adopted this rule. Indeed, our jurisprudence demands that the State must justify intrusions into a citizen's liberty and our review is conducted on a case-by-case basis. Bridgewater, 793 N.E.2d at 1100.

In Patterson v. State, 958 N.E.2d at 486-87, a panel of this Court found that the evidence supported "a determination that Officer Dotson held a reasonable belief that Patterson was armed and dangerous at the time of the pat down search" where the officer was conducting a traffic stop late at night in a high-crime area known for drug activity and gun violence, she detected the odor of burnt marijuana, and she testified to a belief that "guns go hand in hand with drugs."

On the other hand, in Rybolt v. State, 770 N.E.2d 935, 941 (Ind. Ct. App. 2002), trans. denied, a panel of this Court found the pat-down search of the defendant unjustified where the officer testified that he was the sole officer on the scene, he believed that individuals who use narcotics also carry weapons, and he admitted that he "almost always" conducts a pat-down search when he suspects the commission of a drug offense. The Court observed that the officer had not testified that Rybolt's actions made him nervous or caused him to fear for his safety. Id.

Here, the encounter took place in the afternoon with two officers present. The officers' testimony did not suggest that either had heightened anticipation of a weapon because of the smell of marijuana in the vehicle, the strength of which was not described.[2] For reasons unknown, the officers did not search the vehicle for marijuana.[3] They also did not pat-down the female occupants. In short, the officers did not assert a nexus between the marijuana smell and dangerousness. Indeed, both officers denied Rinehart's actions had caused them concern for their safety, and Officer Gedig testified that he did not smell marijuana on Rinehart. For these reasons, we find the instant case more akin to Rybolt than Patterson.

The State also posits that, even if the officers' justifications for the pat-down of Rinehart are inadequate, this is not determinative of constitutional infirmity because the search is objectively reasonable. The State's position is akin to rendering the officer's subjective perceptions irrelevant. It is true that a pat-down search is to be supported by an "objectively reasonable fear for the officer's safety." See Jett v. State, 716 N.E.2d 69, 70 (Ind. Ct. App. 1999). Although an officer's reasons are to be objectively reasonable, his or her subjective reasons are not immaterial. They provide the articulable facts under examination by the trial court and, in turn, this Court, to establish reasonable suspicion. See Clark, 994 N.E.2d at 252 (observing "reasonable suspicion must be based on specific and

---

[2] We do not know, based upon the officers' testimony, if the smell was faint and suggested a prior contact with marijuana or if the smell was pungent enough to raise suspicion that the drug was in the vehicle. We do know that the officers did not search the vehicle for marijuana other than "the immediate area where [Rinehart] was sitting in the vehicle." (Tr. 34.)

[3] The smell of burnt marijuana emanating from a vehicle window would provide a trained officer with probable cause sufficient to justify searching "at least the open interior of the car." Clark, 994 N.E.2d at 260.

10

articulable facts – an objective <u>manifestation</u> – and not an officer's unparticularized hunch") (emphasis added).

Here, the testimony does not disclose specific facts that caused Officers Gedig or Norman to entertain a reasonable fear for their safety in issuing a traffic citation for failure to use a turn signal. Instead, it appears that the pat-down search was a routine matter of course when a male was asked to exit a vehicle during a traffic stop. We conclude there was not adequate justification for a pat-down search.

## Conclusion

The pat-down search was conducted in violation of Rinehart's Fourth Amendment rights. Accordingly, the trial court abused its discretion by admitting evidence obtained in that search.

Reversed.

FRIEDLANDER, J., concurs.

KIRSCH. J., dissents with separate opinion.

11

# IN THE
# COURT OF APPEALS OF INDIANA

WILLIAM RINEHAFT,           )
            )
    Appellant-Defendant,    )
            )
        vs.         )    No. 49A05-1305-CR-236
            )
STATE OF INDIANA,        )
            )
    Appellee-Plaintiff.    )

**KIRSCH, Judge,** *dissenting***.**

I respectfully dissent.

While I agree with my colleagues that a police officer's "standard practice" is a not sufficient basis to justify the pat down search, I believe that here there were objective factors justifying the search. The concern for officer safety, the evidence of the presence of illegal drugs in the car, and the officer's observations are sufficient grounds for the warrantless search and the seizure of the gun.