Elton ROSS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 18A02–0506–CR–574.

Court of Appeals of Indiana.

March 28, 2006.

Ronald K. Smith, Muncie, for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Elton Ross (Ross), appeals his conviction for Count I, possession of cocaine, as a Class D felony, Ind.Code § 35–48–4–6(a), and Count II, obstruction of justice, as a Class D felony, I.C. § 35–44–3–4(a)(3).

We affirm.

### ISSUES

Ross raises three issues on appeal, which we restate as follows:

(1) Whether the trial court erred in denying Ross's Motion to Suppress;

(2) Whether the trial court erred in denying Ross's oral Motion for a Continuance of Trial; and

(3) Whether the trial court erred in allowing the State to successfully challenge for cause a potential juror.

### FACTS AND PROCEDURAL HISTORY

On June 5, 2003, while on patrol in a high-crime area in Muncie, Indiana, Officer Eric Peterson (Officer Peterson) of the Muncie Police Department observed Ross exchange money for "something" with a teenager on a street corner. (Transcript p. 40). Officer Peterson observed this exchange from a distance of thirty to forty feet. Suspecting that an illegal drug transaction had just occurred, Officer Peterson drove up beside Ross, who was now on a bicycle, and asked him to stop. Ross complied, and Officer Peterson noticed that Ross was cupping something in his right hand. Then, as Officer Peterson exited his vehicle, he saw Ross drop an off-white, rock-like substance about the size of a pencil eraser onto the ground. When Officer Peterson subsequently began to arrest Ross, Ross lunged forward, stepping on and smashing the rock-like substance

into the ground. Nevertheless, officers were able to collect some of the substance for a field test analysis, and the results indicated the substance contained a cocaine base.

On June 19, 2003, the State filed an information charging Ross with Count I, possession of cocaine, as a Class D felony, I.C. § 35–48–4–6(a), and Count II, obstruction of justice, as a Class D felony, I.C. § 35–44–3–4(a)(3). On April 30, 2004, Ross filed a Motion to Suppress. On May 6, 2004, the trial court held a hearing on the Motion to Suppress, which was subsequently denied on May 24, 2004. On April 13, 2005, Ross filed a motion asking the court to order a witness, Eddie Strong (Strong), transported for the purpose of testifying at trial. The trial court granted this motion on April 14, 2005, however on the day the trial began, April 21, 2005, Ross learned that Strong was unavailable for transport. As a result, Ross moved for a continuance of the trial, but the trial court denied this motion, and proceeded to hold a jury trial. On the same date, April 21, 2005, the jury found Ross guilty on both counts. On June 2, 2005, the trial court sentenced Ross to eighteen months on his conviction for possession of cocaine, and a concurrent eighteen months on his conviction for obstruction of justice, to be suspended with the exception of ninety (90) days to be served on house arrest with the Delaware County Community Corrections.

Ross now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

#### I. Motion to Suppress

Ross first contends that the trial court erred in denying his Motion to Suppress the evidence obtained at the scene of his arrest. Specifically, Ross argues that Offi-

cer Peterson did not have probable cause to stop, search or arrest him, and that his dropping the cocaine on the ground did not constitute abandonment for Fourth Amendment seizure purposes.

 We review a trial court's ruling on a motion to suppress in a manner similar to claims challenging the sufficiency of the evidence. *Williams v. State*, 745 N.E.2d 241, 244 (Ind.Ct.App.2001). Thus, in reviewing a trial court's decision on a motion to suppress, we do not reweigh the evidence or judge the credibility of witnesses, but determine if there was substantial evidence of probative value to support the trial court's ruling. *Id.* When evaluating determinations of reasonable suspicion, we accept the factual findings of the trial court unless they are clearly erroneous. *Id.* However, the ultimate determination of reasonable suspicion is reviewed de novo. *Id.*

 The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons ... against unreasonable search and seizures." However, a police officer may, without a warrant or probable cause, briefly detain a person for investigatory purposes, if, based on specific and articulable facts together with reasonable inferences from those facts, the officer has a reasonable suspicion that criminal activity "may be afoot." *Sanchez v. State*, 803 N.E.2d 215, 219 (Ind.Ct.App.2004), *trans. denied* (quoting *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Reasonable suspicion is determined on a case-by-case basis by looking at the totality of the circumstances, but is generally satisfied when the facts known to the officer at the moment of the stop, along with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur.

*Bridgewater v. State*, 793 N.E.2d 1097, 1100 (Ind.Ct.App.2003), *trans. denied; Sanchez*, 803 N.E.2d at 220.

Accordingly, the issue now before us begins with an analysis of whether Officer Peterson had reasonable suspicion to stop Ross after observing Ross make a transaction in a high crime area, and then take off on his bicycle cupping something in his hand. In *Williams*, we reversed a trial court's denial of a motion to suppress when a stop was based on an officer actually observing two persons making a hand-to-hand exchange of something, and then dispersing in separate directions after noticing a police officer. *Williams*, 745 N.E.2d at 243. In that case, we highlighted the fact that nothing indicated the transaction took place in a high crime area or that the officer knew any of the participants as being involved in criminal activity. *Id.* at 245. Thus, in *Williams*, we found that two factors—an observed transaction and walking in different directions—were not enough to constitute reasonable suspicion.

In *Bridgewater*, we also held that reasonable suspicion did not exist when officers instigated a stop upon observing the defendant twice flee into a building in a high crime area after noticing the officers' presence. *Bridgewater*, 793 N.E.2d at 1103. There, again, we concluded that two factors—presence in a high crime area, along with fleeing—were not enough to constitute reasonable suspicion to stop Bridgewater. *Id.* However, in *Bridgewater*, we particularly noted that the officers "did not observe any sort of transaction or interaction among Bridgewater and the other two people standing with him," nor was Bridgewater "carrying anything unusual." *Id.*

 As previously mentioned, here, while driving down the street in his patrol

car in a high-crime area, Officer Peterson observed Ross engage in a transaction with another male. When Officer Peterson pulled his car into a parking lot to turn around, Ross took off north on his bicycle, and the other male ran in a southeast direction. Then, as Officer Peterson exited his car to make an investigatory stop of Ross, he noticed Ross cupping something in his right hand, and then dropping that object onto the sidewalk. While Ross's presence in a high-crime area alone would not be enough to constitute reasonable suspicion, such presence can be considered as a factor in the totality of the circumstances confronting Officer Peterson at the time of a stop. *See id.* at 1100. Consequently, we find that multiple factors in this case to support Officer Peterson's stop of Ross, including: (1) Ross being in a high crime area, (2) Ross making a transaction, (3) Ross speeding off in a different direction, and (4) Ross carrying something unusual in his hand. *See id.* at 1103.

Additionally, we find the set of facts before us sufficient to support the subsequent arrest of Ross. A police officer may arrest a suspect without a warrant if the officer has probable cause to believe the suspect has committed a felony. *Lamagna v. State,* 776 N.E.2d 955, 957–58 (Ind. Ct.App.2002). Probable cause adequate to support a warrantless arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that could warrant a person of reasonable caution to believe that the suspect committed a criminal act. *Wessling v. State,* 798 N.E.2d 929, 934–35 (Ind.Ct.App.2003). The amount of evidence necessary to meet the probable cause requirement for a warrantless arrest is determined on a case-by-case basis, and is less than the level of proof necessary to establish guilt beyond a reasonable doubt. *Id.* at 935; *Lamagna,* 776 N.E.2d at 958. As repeatedly stated,

in the present case, Officer Peterson observed Ross engage in a transaction in a high-crime area, then dart off in an opposite direction from the other person cupping something in his hand, and then finally drop a rock-like object onto the ground. Consequently, we find that Officer Peterson properly arrested Ross under probable cause that Ross had committed felony drug possession.

We also disagree with Ross's argument that the officers illegally seized the rock of cocaine he dropped on the ground. Abandoned property is not subject to Fourth Amendment protection, and only when property is abandoned after a citizen has been improperly detained is it not admissible. *Wilson v. State,* 825 N.E.2d 49, 51 (Ind.Ct.App.2005). Here, we have already established that Officer Peterson properly stopped and arrested Ross. Further, the record shows that Ross dropped the rock of cocaine *before* Officer Peterson actually detained, or arrested, him. *See id.* Consequently, we find that Ross abandoned the cocaine, and that it was appropriately seized by the police. Accordingly, the trial court did not err in denying Ross's Motion to Suppress.

II. *Motion for a Continuance of Trial*

Next, Ross argues that the trial court improperly denied his oral Motion for a Continuance on the date of trial. Ross requested a continuance of his trial in order to secure the attendance of his witness, Strong, who was in federal custody at the time. Specifically, Ross asserts that his motion to continue met the requirements of I.C. § 35–36–7–1, which states, in pertinent part:

(a) A motion by a defendant to postpone a trial because of the absence of evidence may be made only on affidavit showing:

(1) that the evidence is material

(2) that due diligence has been used to obtain the evidence; and

(3) the location of the evidence.

(b) If a defendant's motion to postpone is because of the absence of a witness, the affidavit required under subsection (a) must:

(1) show the name and address of the witness, if known;

(2) indicate the probability of procuring the witness's testimony within a reasonable time;

(3) show that the absence of the witness has not been procured by the act of the defendant;

(4) state the facts to which the defendant believes the witness will testify, and include a statement that the defendant believes these facts to be true; and

(5) state that the defendant is unable to prove the facts specific in accordance with subdivision (4) through the use of any other witness whose testimony can be as readily procured.

\* \* \*

(d) A defendant must file an affidavit for a continuance not later than five (5) days before the date set for trial. If a defendant fails to file an affidavit by this time, then he must establish, to the satisfaction of the court, that he is not at fault for failing to file the affidavit at an earlier date.

Here, the record discloses that prior to trial, Ross procured an order for Marion County to transport Strong to his trial for the purpose of testifying; however, the day before trial, Ross learned that Strong was actually in federal custody and could not be transported without filing for a writ of habeas corpus. As a result, on the day of trial, counsel for Ross requested a continuance, explaining that Strong was "an important witness for the defense," and that Strong would testify that he was with Ross immediately before the alleged incident and that Ross did not have any controlled substances in his possession. (Tr. p. 21). In response, the trial court stated:

[TRIAL COURT]: I'm going to overrule ... and continue with the trial. I think that this case has pending for quite some time, that there's been enough opportunity to determine where [Strong] is and how to obtain his attendance.... there's nothing to indicate to the [c]ourt that even if we had gone through all the process, we don't know if the U.S. Attorney's Office and the [f]ederal system would have released him in any event.

(Tr. p. 22).

■■■ Our evaluation of the record leads us to find that Ross did not meet the criteria for a statutory continuance, as laid out in I.C. § 35–36–7–1. While the record shows that Ross knew Strong's identity and whereabouts, the record does not reflect that Ross would be able to procure Strong's testimony within a reasonable time. *See* I.C. § 35–36–7–1(b)(2). Also, even though Strong may have been an "important witness," there is no evidence in the record that Ross was unable to offer the same proof through the use of other testimony. *See* I.C. § 35–36–7–1(b)(5). In fact, the record reveals that Ross did present at least one other witness at the trial who testified she was with Ross for a period of time during the day of the alleged incident. Further, the record discloses that Ross did not file his motion to continue more than five days before the date set for trial, and additionally, nothing in the record indicates that anyone but Ross was responsible for the mistake as to where Strong was being held in custody. *See* I.C. § 35–36–7–1(d).

Moreover, the standard of review for a trial court's ruling on a continuance not required by statute is an abuse of discretion. *Flake v. State*, 767 N.E.2d 1004, 1008 (Ind.Ct.App.2002). An abuse of discretion occurs when the ruling is against the logic and effect of facts and circumstances before the trial court, or where the record demonstrates prejudice from denial of the continuance. Again, in light of the reasons mentioned above, we find sufficient support in the record for the trial court's denial of Ross's motion to continue. Accordingly, we conclude that the trial court did not err or abuse its discretion in denying Ross's motion for a continuance.

### III. *Juror Selection*

Finally, Ross contends that the trial court improperly granted the State's challenge for cause to a Prospective Juror. Specifically, Ross argues that the removal of this particular Prospective Juror, an African American, from the jury panel was racially motivated.

Article I, Section 13 of the Indiana Constitution guarantees a defendant the right to an impartial jury. *Pinkston v. State*, 821 N.E.2d 830, 836 (Ind.Ct.App. 2004), *trans. denied.* Therefore, a biased juror must be dismissed. *Id.* With that said, I.C. § 35–37–1–5 governs juror challenges "for cause" and provides in pertinent part that a good cause for challenge to a person called as a juror is that "the person is biased or prejudiced for or against the defendant." *See* § I.C. 35–37–1–5(a)(11). In the case before us, the following colloquy took place before the start of trial regarding Prospective Juror's status as a potential juror:

[TRIAL COURT]: Did any of you[, the jurors,] recognize any of the names that [Defense Counsel] stated as witnesses?

(Whereupon panelist responds in the affirmative)

[TRIAL COURT]: Yes, Mr. Greenleaf, who did you know?

[PROSPECTIVE JUROR]: [a witness for the defense]

[TRIAL COURT]: Okay. And how do you know [this witness], acquaintance?

[PROSPECTIVE JUROR]: Acquaintance.

[TRIAL COURT]: Okay. Is there anything—

[PROSPECTIVE JUROR]: Family.

[TRIAL COURT]: Okay. Are you related to him?

[PROSPECTIVE JUROR]: Not directly, . . .

[TRIAL COURT]: Is there anything about your relationship with [this witness] that would cause you to give more credibility to his testimony or less credibility? . . .

[PROSPECTIVE JUROR]: Not only that, I [grew] up with him.

[TRIAL COURT]: Okay. And I didn't ask that yet.

[PROSPECTIVE JUROR]: I know, but I'm just—

[TRIAL COURT]: But do you know the Defendant, Mr. Ross?

[PROSPECTIVE JUROR]: Yes[ ].

[TRIAL COURT]: So, would it make it hard for you to be a fair and impartial juror having known him?

[PROSPECTIVE JUROR]: Yes.

[TRIAL COURT]: Okay. I may have the attorneys ask a few more questions on that when we get to that point.

\* \* \*

[THE STATE]: I think you said earlier that you know the defendant, [Ross]?

[PROSPECTIVE JUROR]: Yes.

[THE STATE]: How long have you known him?

[PROSPECTIVE JUROR]: Mostly all my life.

[THE STATE]: Pretty close to him?

[PROSPECTIVE JUROR]: Yes, I would say.

\* \* \*

[THE STATE]: Being close to the Defendant and knowing him pretty much all your life, would that make it hard for you to sit as a juror in his case?

[PROSPECTIVE JUROR]: Yes.

[THE STATE]: At this time, I would challenge for cause.

\* \* \*

[DEFENSE COUNSEL]: ... the Judge is going to instruct you that if you hear the evidence in this case, you have to be convinced beyond a reasonable doubt somebody was guilty. And if you're not convinced of that, you'd have to find him not guilty. Do you have any problem with that idea?

[PROSPECTIVE JUROR]: Yes.

[THE STATE]: Well, what is your problem with that?

[PROSPECTIVE JUROR]: Like I said before, I [have] seen people get convicted for things they didn't do ... I've got a problem with it. Then on top of that, I'm close [ ] [to the] family, okay?

\* \* \*

[TRIAL COURT]: Okay. I will excuse Mr. Greenleaf based upon the fact that he has had a long time relationship with the Defendant and basically grew up with the Defendant. And he stated that he would have a problem applying the law in this case....

(Tr. pp. 15–20.)

 Based on our evaluation of the record, we find that the trial court did not err in excusing Prospective Juror from the jury panel. The decision whether to excuse a juror for cause rests within the trial court's discretion. *Pinkston,* 821 N.E.2d at 836. It is the trial judge who is in the best position to assess the demeanor of prospective jurors. *Id.* Here, our review of the record fails to show that Prospective Juror's excusal from the jury panel was attributable to his race. Rather, the record discloses ample evidence that Prospective Juror was excused on accord of a strong probability that he would be unable to serve as an impartial juror.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly denied Ross's Motion to Suppress and Motion for a Continuance of Trial. In addition, we conclude that the trial court did not err in excusing Prospective Juror from the jury panel.

Affirmed.

SHARPNACK, J., and BARNES, J., concur.