## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 12 2015, 9:10 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

**APPELLANT PRO SE**

Cecil J. Black Jr.
Michigan City, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cecil J. Black, Jr.,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent* | August 12, 2015<br><br>Court of Appeals Case No.<br>71A03-1406-PC-211<br><br>Appeal from the St. Joseph Superior Court<br><br>The Honorable John M. Marnocha, Judge<br><br>Case No. 71D02-0809-PC-42 |

**Crone, Judge.**

## Case Summary

[1]     Cecil J. Black, Jr., appeals the postconviction court's denial of his petition for postconviction relief. He contends that the postconviction court erred in

denying his motion for continuance and also raises numerous allegations of ineffective assistance of trial and appellate counsel. Finding that the postconviction court acted within its discretion in denying Black's last-minute motion for continuance and finding that Black failed to establish ineffective assistance of counsel, we affirm.

# Facts and Procedural History

[2] The facts as summarized in an unpublished memorandum decision on Black's second direct appeal are as follows:

> On September 24, 2003, Black and his friend, Eddy Kawira, had spent the day at Black's home drinking alcohol and using illegal substances. In the late afternoon, John Luke came to Black's residence to buy drugs from Black. Luke purchased the drugs using money that he had stolen from Black's father. After Black learned of the theft, he became outraged. He walked to Luke's house, where Luke's girlfriend delayed Black while Luke escaped from the back of the residence.

> Black walked back to his own residence, still angry, and vowed that he would "f*ck [Luke] up." Shortly thereafter, Luke's girlfriend arrived at Black's house to discuss the situation, but Black shoved her off of his porch and said that she and Luke were acting together to "screw" him out of his money.

> After the confrontation with Luke's girlfriend, Black and Kawira drove away from Black's residence to purchase more beer. While they were out, Black purchased a handgun and, on the drive back to Black's house, he fired the gun into the air several times.

> Early on the morning of September 25, 2003, Frank Pangallo and Renee Milligan drove to Black's residence so that Renee could repay Black some money that she owed to him. Black showed Pangallo the handgun that he had purchased, and Pangallo showed Black how to operate the "somewhat broken" weapon. Black mentioned that Luke had stolen money from him and Pangallo and Milligan observed that Black was still upset about it.

As Pangallo and Milligan left Black's house and walked to their vehicle, Pangallo noticed someone, later identified as Luke, walking down the street towards them. Before Pangallo entered the vehicle, he turned around and saw Black pointing the handgun at Luke, who was holding a knife in his hand. Pangallo heard the men arguing and, while Pangallo was turned in the other direction, he heard a gunshot. When he turned around, he saw Luke on the ground. Black fired his gun at Luke, who was attempting to flee, two more times and then fled. Pangallo and Renee drove away to a pay phone and called 911.

South Bend Police officers arrived on the scene within minutes and found Luke on the street. Luke had been shot three times, and one of the wounds proved fatal. He had also suffered contusions and bruises on his left cheek. The forensic pathologist who conducted [the] autopsy testified that the bullets causing Luke's injuries had been fired from a gun that was at least three feet away at the time of the shooting.

Five days after the shooting, Black surrendered to the police, having cut his hair, thrown away the clothing he was wearing at the time of the incident, and disposed of the handgun. Black provided different versions of the shooting to the police, at first contending that he and Luke had fought and the gun had fired accidentally and denying that he had purchased the handgun only hours before the shooting. Black then changed his story, admitting that he had purchased the gun that night and claiming that he had fired the weapon in self-defense, notwithstanding an earlier claim that he did not know that Luke had been carrying a knife at the time of the shooting.

On September 26, 2003, the State charged Black with murder. A jury found Black guilty as charged on September 10, 2004. Black appealed his conviction and this court reversed, finding that he had not received a fair trial because the trial court had prohibited him from questioning prospective jurors regarding self-defense during voir dire. *Black v. State,* 829 N.E.2d 607, 612 (Ind.Ct.App.2005) [("*Black I*")].

Black's second jury trial commenced on February 27, 2007. He proffered jury instructions on self-defense, voluntary manslaughter, and involuntary manslaughter. The trial court instructed the jury on self-defense and voluntary manslaughter but refused to give the involuntary manslaughter instruction because there was no evidence to support it. The jury found Black guilty as charged, and on March 28, 2007, the trial court sentenced Black to fifty-five years imprisonment.

*Black v. State*, No. 71A03-0705-CR-196 (Ind. Ct. App. Oct. 9, 2007) ("*Black II*") (some citations omitted). The same attorney ("Counsel") who represented Black in his appeal in *Black I* also represented him at trial and on appeal in *Black II*.

[3] Black filed a direct appeal in *Black II*, claiming that the trial court erred in refusing to give his proffered jury instruction on involuntary manslaughter. Another panel of this Court affirmed his conviction in a memorandum decision. *Id.*

[4] In September 2008, Black's court-appointed counsel filed a petition for postconviction relief ("PCR"), and in October 2008, the State filed its answer.[1] In February 2012, Black's counsel withdrew his appearance. In January 2014, Black filed his pro se amended petition for postconviction relief, claiming that he received ineffective assistance of counsel during his second trial and appeal in *Black II*. On the day of his March 2014 evidentiary hearing, Black orally requested a continuance in order to secure the attendance of Counsel as a witness. The postconviction court denied his motion and took judicial notice of its case files in *Black I* and *Black II* as well as the trial transcript in *Black II*. On May 21, 2014, the court entered its findings of fact and conclusions of law in an

---

[1] Black has not included a copy of either of these filings in his appendix. Thus, it is unclear what issues were raised in his original petition.

order denying Black's petition for postconviction relief. Black now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

Black contends that the postconviction court erred in denying his petition for postconviction relief. The petitioner in a postconviction proceeding "bears the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Postconviction Rule 1(5); *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013). When issuing its decision to grant or deny relief, the postconviction court must make findings of fact and conclusions of law. Ind. Postconviction Rule 1(6). A petitioner who appeals the denial of his postconviction petition faces a rigorous standard of review. *Massey v. State*, 955 N.E.2d 247, 253 (Ind. 2011). In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *McKnight v. State*, 1 N.E.3d 193, 199 (Ind. Ct. App. 2013), *trans. denied* (2014). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Passwater*, 989 N.E.2d at 770 (citation and quotation marks omitted). In other words, if a postconviction petitioner was denied relief in the proceedings below, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the one reached by the postconviction court. *Massey*, 955 N.E.2d at 253. Postconviction relief does not offer the petitioner a super appeal; rather, subsequent collateral challenges must be based on grounds

enumerated in the postconviction rules. *McKnight*, 1 N.E.3d at 199. These rules limit the scope of relief to issues unknown or unavailable to the petitioner on direct appeal. *Id*. Where, as here, the judge who presided over the defendant's trial is also the judge who presided over his postconviction proceedings, the postconviction court's findings and judgment should be entitled to "greater than usual deference." *Hinesley v. State*, 999 N.E.2d 975, 982 (Ind. Ct. App. 2013) (citation omitted), *trans. denied* (2014).[2]

## Section 1 – The postconviction court acted within its discretion in denying Black's motion for continuance.

[6] Black asserts that the postconviction court abused its discretion in denying his oral motion for continuance. Where a continuance is not required by statute, a ruling on a motion for continuance lies within the postconviction court's discretion and will be reversed only for an abuse of that discretion and resulting prejudice. *Evans v. State*, 809 N.E.2d 338, 342 (Ind. Ct. App. 2004), *trans. denied*. An abuse of discretion occurs where the court's ruling is against the logic and effect of the facts and circumstances before it or where the record demonstrates prejudice from the denial of the continuance. *Ross v. State*, 844 N.E.2d 537, 544 (Ind. Ct. App. 2006).

---

[2] After this Court's decision in *Black I* reversing and remanding for a new trial, the original trial judge recused, and the case was assigned to the current trial/postconviction court.

[7] As a pro se litigant without legal training, Black is held to the same standard as a licensed attorney. *Evans*, 809 N.E.2d at 344. He requested a continuance on the day of the PCR hearing. A continuance requested for the first time on the morning of trial is not favored. *Williams v. State*, 29 N.E. 3d 144, 147 (Ind. Ct. App. 2015). *See also Laster v. State*, 956 N.E.2d 187, 192-93 (Ind. Ct. App. 2011) (holding that trial court acted within its discretion in denying last-minute oral motion for continuance to party seeking to locate a witness, where other witnesses and jurors were present and ready to proceed and where moving party made no showing as to likelihood of locating witness within a reasonable time).

[8] Black requested the continuance at the beginning of the PCR hearing, stating that he needed more time to secure Counsel's attendance as a witness. In denying his motion, the postconviction court emphasized (1) the unlikelihood of success in securing Counsel's attendance and (2) the already protracted postconviction proceedings. With respect to the probability of securing Counsel's attendance, the postconviction court established for the record that the court had been unsuccessful in its own attempts to secure Counsel's attendance on Black's behalf. The court explained that Counsel had relocated to Ohio in the intervening years since *Black II* and that the court had been unsuccessful in its attempts to serve him with a summons and subpoena, which were returned as not servable. *See* PCR Tr. at 12 ("Given the attempts to have subpoenas issued to [Counsel], the Court does not believe that a continuance in this hearing would result in [Counsel's] appearance in this case or Mr. Black's

ability to serve him with a subpoena for any future hearing.").  As for the issue of timing, the postconviction court emphasized, "[T]his whole case began eleven years ago with the filing of the original information.  It has gone through the appellate process twice.  The post[]conviction relief case … has been pending for five and-a-half years."  *Id*.  *See also Evans*, 809 N.E.2d at 342 (holding that postconviction court acted within its discretion in denying petitioner's last-minute motion for continuance where PCR petition had already sat idle for years).

[9]     Black did not present evidence to show that he had attempted to secure Counsel's attendance or that he could even do so where Counsel was outside the territorial limits of Indiana.  *See* Ind. Trial Rules 4.14, 4.4 (outlining circumstances for serving nonresidents beyond state's territorial limits).  He also failed to demonstrate the facts to which he believed that Counsel would have testified.[3]  Moreover, Black's postconviction proceedings span more than five years, yet he failed to explain why he had not sought this continuance earlier rather than requesting it on the day of the hearing, when other witnesses were present and ready to testify.  Based on the foregoing, we conclude that the

---

[3] Black claims that he did present facts to which Counsel would be expected to testify, citing as support PCR Tr. at 3-6.  However, the cited portion of the PCR transcript does not address *facts* to which Counsel was expected to testify; instead, it consists merely of Black's general explanations of the burden of proof in ineffective assistance cases and general statements concerning his need to secure Counsel's attendance in order to show that Counsel's alleged (but unspecified) omissions resulted in an unlawful conviction.

postconviction court acted within its discretion in denying his motion for continuance.

## Section 2 – Black was not denied his constitutional right to effective assistance of trial counsel.

Black maintains that he was denied his constitutional right to effective assistance of counsel in his second trial and appeal. At the outset, we note the postconviction court's comprehensive finding, which states in pertinent part,

> [M]uch, if not all, of the evidence adduced at the PCR hearing was in the form of the petitioner showing witnesses various reports and portions of trial transcripts, having the witnesses read those items, then asking the witnesses to state their opinion about what they had just read. The petitioner failed to present any cogent evidence or argument showing that he is entitled to relief. He has failed to prove that his trial counsel was ineffective; he has failed to prove that his appellate counsel was ineffective. He has failed to prove (or even argue) what his trial and appellate counsel either did, or failed to do, which was ineffective.

Appellant's App. at 39 (citations to record omitted). Our review of the PCR transcript leads us to the same conclusion, but we nevertheless address Black's ineffective assistance claims on the merits.

To prevail on an ineffective assistance claim, Black must satisfy two components; he must demonstrate both deficient performance and prejudice resulting from it. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is "representation [that] fell below an objective standard of reasonableness, [where] counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Passwater*, 989

N.E.2d at 770. We assess counsel's performance based on facts that are known at the time and not through hindsight. *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind. Ct. App. 2006), *trans. denied*. Evidence of isolated poor strategy, inexperience, or bad tactics will not support an ineffective assistance claim; instead, we evaluate counsel's performance as a whole. *Flanders v. State*, 955 N.E.2d 732, 739 (Ind. Ct. App. 2011), *trans. denied* (2012). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Hinesley*, 999 N.E.2d at 983.

[13] In his amended PCR petition, Black raised the following allegations of deficient performance by Counsel before and during his second trial: (1) failure to properly investigate and prepare for trial;[4] (2) failure to impeach certain of the State's witnesses; and (3) failure to object during the State's closing argument.

---

[4] With respect to Counsel's pretrial preparation and investigation, Black raised a novel argument in his amended PCR petition that Counsel was ineffective in relying solely on the investigation conducted by his previous (ineffective) counsel in his first trial. Without evidentiary support, he asserted that his first trial counsel was ineffective and then characterized Counsel's reliance on previous counsel's pretrial investigation as being derivatively deficient. He failed to develop a cogent argument on this issue at the PCR hearing or in his appellant's brief and therefore has waived it for review. Ind. Appellate Rule 46(A)(8); *Ross v. State*, 877 N.E.2d 829, 833 (Ind. Ct. App. 2007), *trans. denied* (2008).

Appellant's App. at 47.[5] "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Because *Strickland's* prejudice prong necessitates a showing of a reasonable probability that counsel's deficient performance affected the outcome of the trial, establishing ineffective assistance of counsel based on counsel's failure to investigate "requires going beyond the trial record to show what investigation, if undertaken, would have produced." *McKnight*, 1 N.E.3d at 201.

[14] Black's investigation argument focuses on Counsel's alleged failure to examine the transcript from his first trial to show that police investigators made false, inconsistent statements under oath concerning the presence of four one-dollar bills in the victim's pants pocket and the presence of blood on the pant leg. He claims not only that the officers made false statements but also that the prosecutor in his second trial knowingly allowed the statements in order to create a false narrative and that Counsel was ineffective for failing to address the alleged perjury. Because of the overlap between this argument and his

---

[5] In his appellant's brief, Black also includes an assertion of ineffective assistance based on Counsel's alleged failure to object or require the State to make a showing of good faith effort to secure certain witnesses for trial before using prior depositions or trial testimony of an unavailable witness at trial. In his amended PCR petition, he failed to raise this assertion vis-à-vis Counsel's performance at trial. Instead, he raised it only in conjunction with Counsel's performance on appeal. As such, we analyze the allegation only as it pertains to Counsel's performance on appeal. *See Walker v. State*, 843 N.E.2d 50, 57 (Ind. Ct. App. 2006) (issues not raised in PCR petition may not be raised for first time on PCR appeal), *trans. denied*, *cert. denied* (2007).

argument that Counsel was ineffective in failing to impeach the officers who conducted the crime scene investigation, we address the allegations together.

[15]  Among the witnesses called to testify at Black's PCR hearing were crime scene investigators Sergeant Randy Kaps and Sergeant Alex Arendt. In his examination of the officers, Black sought to establish that they had testified falsely at his trials concerning their investigations of the victim's pants. Using excerpts from the trial transcripts, Black questioned the officers concerning alleged discrepancies between the findings of their initial investigation, pursuant to which the pants were found to contain no money, and a subsequent investigation showing that four one-dollar bills were discovered inside the small watch pocket.[6] He characterizes the inconsistent reports and testimony to the latter as perjurious. He does the same with the discrepancy between the initial investigation, where police did not notice any blood, and the investigators' subsequent report of discovering blood by a hole in one of the pant legs.

[16]  Black also questioned Frank Schaffer, the prosecutor from his second trial, using excerpts from the transcripts from both trials and claiming that Schaffer had essentially allowed the officers to give false testimony. From this line of questioning, Black sought to establish derivatively that Counsel was ineffective for failing first to investigate and then to impeach these witnesses. Instead, the witnesses' PCR testimony explained their trial testimony to the effect that it is

---

[6]  The relevance of the four one-dollar bills goes to the question of whether just prior to the murder, the victim was attempting to repay Black's father for the money he had previously taken from him.

customary for the initial examination of evidence to be cursory, followed by more thorough examination(s) of each piece of evidence. Thus, the inconsistencies were owing to further discoveries made during the subsequent comprehensive examination of evidence. As such, Black's claim that Counsel was ineffective in not impeaching these witnesses based on prior "false" statements is simply not supported by the evidence.

In a closely related claim, Black also submits that Counsel was ineffective in failing to object to the prosecutor's allegedly inflammatory statements during closing argument. However, he has failed to identify the specific remarks to which he now objects and has otherwise failed to develop a cogent argument with citations to authority demonstrating that any objection would have been sustained and that he was prejudiced by Counsel's failure to object. *Perryman v. State*, 13 N.E.3d 923, 931 (Ind. Ct. App. 2014), *trans. denied*. As such, he has waived this issue for review. Ind. Appellate Rule 46(A)(8); *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015).

## Section 3 – Black failed to establish that he received ineffective assistance of appellate counsel in *Black II*.

Black also contends that he received ineffective assistance of counsel on his second direct appeal. The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel in that the defendant must show that appellate counsel was deficient in his/her performance and that the deficiency resulted in prejudice. *Strickland,* 466 U.S. at

686; *Bieghler v. State,* 690 N.E.2d 188, 192–93 (Ind. 1997), *cert. denied* (1998). Ineffective assistance of appellate counsel claims generally fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006).

[19] Black's claims against Counsel address waiver of issues for failure to raise them or present them fully in his second direct appeal. "Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel." *Manzano v. State*, 12 N.E.3d 321, 330 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied* (2015). To show that counsel was ineffective for waiving an issue by failing to raise it on direct appeal, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Id*. at 329.

[20] In evaluating the performance prong when appellate counsel has failed to raise an issue and waiver results, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Timberlake v. State,* 753 N.E.2d 591, 605–06 (Ind. 2001) (citation omitted). "If the analysis under this test demonstrates deficient performance, then we examine whether the issues which ... appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." *Manzano*, 12 N.E.3d at 329-30.

In *Black II*, Counsel raised one issue: whether the trial court erred in refusing his proffered jury instruction on involuntary manslaughter. Black maintains that Counsel was ineffective for failing to allege fundamental error in the trial court's finding that State's witnesses Milligan and Kawira were unavailable to testify at his second trial.[7] With respect to the State's attempts to secure Milligan and Kawira's attendance at the second trial, the prosecutor from that trial testified at the PCR hearing in pertinent part as follows:

> Q. Didn't you violate Petitioner Black's Sixth Amendment Right to confront his accusers, when you failed to make a good faith effort to obtain the presence of Renee Milligan [and] Eddy Kawira at trial?
>
> A. Nope.
>
> ….
>
> Q. … So you sent subpoenas out for [Milligan] … well, you said you sent officers out, you didn't send subpoenas?
>
> A. I'm sorry?

---

[7] Counsel did not object to the trial court's finding of unavailability, which allowed the State to use Milligan's *Black I* trial testimony and Kawira's deposition testimony. This limited Counsel to raising the issue as fundamental error.

> The fundamental error exception [to the contemporaneous objection rule] is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." This exception is available only in "egregious circumstances."

*Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010) (citations omitted).

Q. You didn't send subpoenas to their former addresses or any addresses at that time where you might have tried to locate them?

A. No, we used to give the subpoenas to the homicide officers, then they went out and served them personally.

Q. So you sent officers to Oklahoma?

A. No, we sent officers out with subpoenas, they contacted the right people. If someone was out-of-state, they tried to get authorities from out-of-state to track them down.

Q. And that's—

A. Unfortunately in Indiana, a subpoena doesn't do any good outside the State of Indiana.

Q. And that's all you did?

A. That's what I gave the homicide investigator's job to do, yes.

Q. There is nobody to testify to that?

A. Excuse me?

Q. There's nobody to testify to that?

A. No, I testified to the Court what we did, obviously … or with the transcript you provided.

Q. Isn't it more that you … isn't it [sic] more required than that, than just you saying it?

A. Nope.

Q. So it's just your word, your word is good enough then?

A. My word as officer of the Court.

Q. There is no procedural thing that you could have done to try to

secure Renee Milligan and Eddy Kawira, for testimony you wished to use against the Petitioner Black?

A. Obviously we did, and it wasn't successful.

Q. So you did everything you could to locate two individuals?

A. Yes, because I told the Court that as an officer of the Court.

PCR Tr. at 38-40.

[22] Black neither called Milligan as a witness at the PCR hearing nor otherwise made a showing to the postconviction court concerning her availability. As for Kawira, Black called him to testify at the PCR hearing, and Kawira said that he did not receive a subpoena to testify at the second trial and that if he had received one, he would have returned to Indiana to testify. This testimony did not necessarily conflict with the prosecutor's, and even if it had, the postconviction court was the trier of fact charged with making credibility determinations, which we may not second-guess on appeal. Moreover, Black did not question Kawira concerning facts to which he would have testified had he attended the trial and how any such testimony might have varied from the statements made in his prior deposition, during which he was under oath and subject to cross-examination.

[23] Simply put, Black failed to meet his burden of establishing that the issue of Milligan's and Kawira's availability was obvious from the record and clearly stronger than the issue raised on appeal in *Black II*. As such, he has failed to demonstrate that Counsel was ineffective for failing to raise witness availability as fundamental error on appeal in *Black II*. Accordingly, we affirm.

Affirmed.

Brown, J., and Pyle, J., concur.